UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROYECTO CCC EMPALME I, S.A.P.I DE C.V., <br><br> Petitioner, <br><br> v. <br><br> COMISIÓN FEDERAL DE ELECTRICIDAD, <br><br> Respondent. | Case No. 1.24-cv-09739 |

## PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRAL AWARD

Bernardo M. Cremades Román

B. CREMADES Y ASOCIADOS
Goya 18, Planta 2
28001 Madrid
Kingdom of Spain
Tel.: +34 914 237 200
www.bcremades.com

*Attorneys for Proyecto CCC Empalme I, S.A.P.I. de C.V.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

PARTIES ...................................................................................................................................... 2

JURISDICTION AND VENUE ................................................................................................... 3

FACTUAL BACKGROUND ....................................................................................................... 7

    A.   *The Contract Between Empalme and CFE* ....................................................................... 7

    B.   *The Arbitration* ................................................................................................................ 8

ARGUMENT ............................................................................................................................... 18

    A.   *Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement* ........................................................................................................................................ 19

    B.   *None of the Limited Grounds to Refuse Recognition and Enforcement Exist* ................... 21

CONCLUSION ............................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Agility Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703 (S.D.N.Y. 2011), *aff'd*, F. App'x 149 (2d Cir. 2012) …………………………… 19, 20

*American Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pak., Ltd.*, 659 F. Supp. 426 (S.D.N.Y. 1987), *aff'd*, 828 F.2d 117 (2d Cir. 1987) …………………………. 19

*Banco de Seguros del Estado v. Mut Marine Offices, Inc.*, 257 Supp. 2d 681 (S.D.N.Y. 2003) ………………………………………………………………... 19

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ……………………………... 6

*Capital Ventures Int'l v. Republic of Argentina,* 552 F.3d 289 (2d Cir. 2009) ……… 7

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126 (2d Cir. 2015) ……………… 18, 19

*Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92 (2d Cir. 2016) …………………………… 18

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56 (2d Cir. 2022) …………………………………………………………………………. 18

*F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318 (S.D.N.Y. 2010) ………………………………………………………………... 20

*Gater Assets Ltd. V. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) ………………... 5

*Gomez de Hernandez v. Wells Fargo Advisors, LLC*, No. 16 CIV 9922 (LGS), 2017 WL 3088396 (S.D.N.Y. July 20, 2017) …………………………………………... 18

*Hanil Bank v. PT. Bank Negara Indonesia, (Persero),* 148 F.3d 127 (2d Cir. 1998) .. 5

*In re Waterside Ocean Nav. Co.*, 737 F.2d 150 (2d Cir. 1984) ……………………... 19

*MGM Productions Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772 (S.D.N.Y. 2003), *aff'd,* 91F. App'x 716 (2d Cir. Feb. 9, 2004) ……………………. 21

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41 (2d Cir. 1994) …………………………………………………………………………… 18

*Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607 (1992) ……………………… 4, 5, 7

*Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396 (2d Cir. 2009) ………… 19, 21

*In re Oltchim, SA.*, 348 F. Supp. 2d 97 (S.D.N.Y. 2004) …………………………… 21

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997) ………………………………………………………………………………… 20

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ………………………………… 18

*Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007) ………………………………….... 19

**Statutes**

28 U.S.C. §§ 1330, 1391, 1602-1611 ……………………………………………...… *passim*

9 U.S.C. §§ 201-207, 301, 302, 305………………………………………………….. *passim*

21 U.S.T. 2517 (New York Convention) …………………………………………… *passim*

1438 U.N.T.S. 245 (Panama Convention) ………………………………………….... *passim*

Petitioner *Proyecto CCC Empalme I, S.A.P.I. de C.V.* ("**Empalme**" or "**Petitioner**"), by and through its attorneys, alleges as follows in support of its Petition to Recognize and Enforce Foreign Arbitral Award, pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "**New York Convention**"), the Inter-American Convention on International Commercial Arbitration of January 30, 1975, 1438 U.N.T.S. 245 (the "**Panama Convention**") and Chapter 2 and 3 of Title 9 of the Federal Arbitration Act (the "**FAA**"), the foreign arbitral award dated March 14, 2023 (the "**Final Award**"),[1] as amended by the memorandum dated June 12, 2023 (the "**Memorandum**"),[2] rendered in the arbitration (the "**Arbitration**") between Petitioner on the one hand, and Respondent *Comisión Federal de Electricidad* ("**CFE**" or "**Respondent**"), on the other hand (Petitioner and Respondent hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**").[3]

The Arbitration, captioned *Proyecto CCC Empalme I, S.A.P.I. de C.V. c/ Comisión Federal de Electricidad*, was seated in Mexico City, Mexico and conducted under the 2014 Rules of the London Court of International Arbitration ("**LCIA Rules**").

## PRELIMINARY STATEMENT

On April 15, 2015, Petitioner and Respondent entered into Lump Sum Financed Public Works Contract ("*Contrato de Obra Pública Financiada a Precio Alzado*") No. PIF-017/2015 for

---

[1] A true and correct copy of the Final Award in the original Spanish, accompanied by a certified English translation, is attached as Exhibit A to the December 17, 2024 Declaration of Rodrigo Zamora Etcharren ("**Zamora Declaration**").

[2] A true and correct copy of the Memorandum in the original Spanish, accompanied by a certified English translation, is attached as Exhibit B to the Zamora Declaration.

[3] All capitalized terms not specifically defined in this Petition retain their meaning as defined in Exhibit C to the Zamora Declaration,

1

the construction of a combined cycle power plant in Sonora, Mexico, to meet the growing energy demand in northeastern Mexico (the "**Contract**").[4] Subsequently, the Contract was amended on: (1) October 17, 2017; (2) March 20, 2018; (3) July 30, 2018; (4) November 23, 2018; and (5) March 4, 2019.[5] Additionally, the Parties also entered an agreement regarding the application of Clause 25.5 of the Contract (the "**25.5 Agreement**"), dated January 16, 2019.[6]

Over the course of the project, disputes arose regarding performance of, and compensation owed, under the Contract. Pursuant to the dispute resolution clause in the Contract, on March 18, 2020, Petitioner initiated the Arbitration against Respondent under the LCIA Arbitration Rules.

On March 14, 2023, an arbitral tribunal duly constituted under the LCIA Rules (the "**Tribunal**") issued the Final Award, ordering Respondent to pay Petitioner certain sums, plus interest. On June 12, 2023, the Tribunal issued the Memorandum, which "shall form an integral part of the Final Award."[7] Respondent has refused to pay the amounts due under the Final Award. Therefore, Petitioner now seeks to recognize and enforce the Final Award, in accordance with the New York Convention, Panama Convention and the FAA.

## **PARTIES**

1.    Petitioner Empalme is a corporation organized and existing under the laws of Mexico, with its principal place of business at Avenida Ejército Nacional Mexicano No. 453, Piso 6 Granada, Miguel Hidalgo, 11520, Mexico City, Mexico.

---

[4] A true and correct copy of the Contract in the original Spanish, accompanied by a certified English translation of the relevant portions, is attached as Exhibit C to the Zamora Declaration.
[5] True and correct copies of the amendments to the Contract are attached as Exhibit D to the Zamora Declaration.
[6] A true and correct copy of the 25.5 Agreement is attached as Exhibit E to the Zamora Declaration.
[7] As the Memorandum "shall form an integral part of the Final Award," any reference to the Final Award refers to its contents as amended by the Memorandum.

2

2.      Respondent CFE is a Mexican company wholly owned by the Mexican State, headquartered at Avenida Paseo de la Reforma No. 164, Mezanine 2, Colonia Juárez, Delegación Cuauhtémoc, 06600, Mexico City, Mexico. CFE is an agency or instrumentality of Mexico.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction in this proceeding pursuant to 9 U.S.C. §§ 201, 203, 301 and 302, which provide that United States District Courts shall have original jurisdiction over actions and proceedings governed by the New York Convention and the Panama Convention. Both Mexico and the United States are signatories to the New York and Panama Conventions.

4.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that United States District Courts shall have original jurisdiction over any nonjury civil action against a foreign state, as defined in 28 U.S.C. § 1603(a), unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement. Section 1603(a) defines a "foreign state" to include "an agency or instrumentality," as defined in § 1603(b).

5.      Three of the FSIA's exceptions to immunity enumerated in 28 U.S.C. §§ 1605-1607 independently confer subject matter jurisdiction to recognize and enforce the Final Award, as amended by the Memorandum, against CFE here.

6.      First, the "arbitration" exception in 28 U.S.C. § 1605(a)(6) confers jurisdiction in an action "to confirm an award made pursuant to [a foreign State's] agreement to arbitrate" and "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). These requirements

are satisfied here: the Final Award that Petitioner seeks to recognize and enforce is the product of the arbitration agreement between Petitioner and CFE, and it is governed by the New York and/or Panama Conventions.

7.     Second, the "waiver" exception in 28 U.S.C. § 1605(a)(1) confers jurisdiction in an action "in which the foreign state has waived its immunity either explicitly or by implication. . . ." This exception applies here because CFE in Clause 30.4 of the Contract expressly waived its sovereign immunity as follows:

> **Waiver of Immunity.** Both the Commission and the Contractor agree that this Contract and the transactions described herein constitute commercial activities of the Parties. To the extent permitted by Applicable Law, the Parties hereby expressly and irrevocably waive any right of immunity that either of them or their assets may have or hereafter acquire (whether characterized as sovereign immunity or otherwise) with regard to any arbitration proceeding instituted pursuant to Clause 30.3 or from any legal proceeding brought to enforce any arbitral award resulting from any arbitration proceeding instituted pursuant to Clause 30.3, whether in Mexico or in any foreign jurisdiction, including, without limitation, immunity from service of process, immunity from jurisdiction or the judgment of any court or tribunal, immunity from writ of enforcement of a judgment, and immunity from preventive attachment on any of their assets; in the understanding that, pursuant to Article 4 of the Federal Code of Civil Procedure, a Mexican court may not order a preventive attachment, an attachment in aid of the enforcement of a judgment, or a writ of enforcement against any of the property or assets of the Commission.

Zamora Decl., Ex. C at 6.

8.     Third, the "commercial activity" exception in 28 U.S.C. § 1605(a)(2) confers subject matter jurisdiction because this proceeding is "based upon . . . an act outside the territory of the United States in connection with a commercial activity of [CFE] elsewhere" that "cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Clause 10.1 of the Contract required CFE to remit all payments due under the Contract to a designated bank account located in New York. *Id.* at 3. CFE's failure to fully make all required payments in New York caused a "direct effect" in the United States sufficient to confer jurisdiction under § 1605(a)(2). *See Republic of*

4

*Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992) (holding that "direct effect" in the United States existed where "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming"); *Hanil Bank v. PT. Bank Negara Indonesia, (Persero)*, 148 F.3d 127, 132 (2d Cir. 1998) (same). In addition, CFE enforced a guarantee pursuant to Clause 11.3 of the Contract in New York, referred to in the Final Award as the "HSBC Letter of Credit." Zamora Decl., Ex. C at 4, Ex. F.[8]

9.    The Court has personal jurisdiction over CFE pursuant to 28 U.S.C. § 1330(b), which authorizes personal jurisdiction over a foreign state (including an agency or instrumentality of a foreign state, such as CFE here) that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608, which governs service on agencies and instrumentalities of a foreign state. Petitioner will serve CFE in accordance with 28 U.S.C. § 1608.

10.    The Second Circuit has determined that a sovereign and its "alter egos" are not entitled to due process protection. *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021).  Even assuming that CFE is not considered an "alter ego" and thus enjoys due process rights in this proceeding, CFE is subject to this Court's personal jurisdiction for at least two independent reasons.

11.    First, CFE's contacts with the United States, and with New York in particular, are more than sufficient to satisfy due process. Pursuant to Clause 10.1 of the Contract, CFE was required to remit all payments under the Contract to a designated bank account located in New York. CFE's failure to fully make payments in New York as required satisfies the due process

---

[8] A true and correct copy of CFE's enforcement of the HSBC Letter of Credit is attached as <u>Exhibit F</u> to the Zamora Declaration.

standard for jurisdiction over CFE in this proceeding. *Hanil Bank*, 148 F.3d at 134 (holding that defendant instrumentality was subject to personal jurisdiction because it "should reasonably have expected to be sued in the United States were it to fail to make a payment in New York"). CFE also agreed (in the Contract of which it was the principal drafter) to denominate all of its payment obligations under the Contract in U.S. dollars, further reinforcing that CFE reasonably should have anticipated proceedings in the United States to enforce a future U.S. dollar award in Petitioner's favor, such as the Final Award here. Additionally, Clause 11.1 of the Contract provides that any guarantee issued pursuant to the Contract can be issued by a New York bank, and in fact CFE actually enforced in the HSBC Letter of Credit in New York pursuant to Clause 11.3 of the Contract. Zamora Decl., Ex. C at 3, Ex. F. CFE's enforcement of this guarantee in New York was subject to extensive briefing during the Arbitration and played a major role in the Final Award. See, e.g., Zamora Decl., Ex. A at ¶¶ 208-250.

12.     Even further, on April 12, 2019, CFE paid $472,556,357.28 to Petitioner from a Bank of America branch located in Richmond, Virginia for payment of the Contract Price, minus specific sums related to the fifth amendment to the Contract. Payment was made to Petitioner in an HSBC bank account located in New York. Zamora Decl., Ex. G.[9]

13.     Taken together, these facts are more than sufficient to satisfy the due process standard for jurisdiction over CFE.

14.     Second, both parties in Clause 30.4 of the Contract "waive[d] any right of immunity which either one of them or their assets may have or acquire in the future (whether characterized as sovereign immunity *or any other type of immunity*) in respect to any . . . legal

---

[9] A true and correct copy of the payment record is attached as Exhibit G to the Zamora Declaration.

procedure initiated to enforce an arbitral award resulting from any arbitration pursuant to Clause 30.3, whether in Mexico or in any other foreign jurisdiction" (emphasis added). Zamora Decl., Ex. C at 6.. The quoted language constitutes a waiver by CFE of any personal jurisdiction defense it otherwise might have had in this proceeding. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (internal quotations and citation omitted); but *see Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 291-92 (2d Cir. 2009) (interpreting, in dicta, Argentina's waiver of "immunity (sovereign or otherwise) from jurisdiction of any court" in a bond offering circular governed by German law as not amounting to a waiver of personal jurisdiction).

15.     Finally, venue in this District is proper pursuant to 9 U.S.C. §§ 204, 301, 302 and 28 U.S.C. § 1391.

## **FACTUAL BACKGROUND**

### A. **The Contract Between Empalme and CFE**

16.     On April 15, 2015, the Parties entered into Lump Sum Financed Public Works Contract ("*Contrato de Obra Pública Financiada a Precio Alzado*") No. PIF-017/2015 (previously defined as the "Contract"). Zamora Decl. Ex. C, at 2. Subsequently, the Contract was amended on: (1) October 17, 2017; (2) March 20, 2018; (3) July 30, 2018; (4) November 23, 2018; and (5) and March 4, 2019. Zamora Decl., Ex. D. Additionally, the Parties also entered an agreement regarding the application of Clause 25.5 of the Contract, dated January 16, 2019. Zamora Decl., Ex. E.

17.     The Contract called for completion of the Project for a price of $476,844,369.19,

to be paid by CFE to Petitioner. Zamora Decl., Ex. A at ¶ 491.

18.     Pursuant to Clause 18.1 of the Contract, once the Works had been completed and had passed the appropriate Commissioning, Operational and Performance Tests, CFE was obligated to issue the Provisional Acceptance Certificate.  The issuance of this certificate had major implications for the Project, which included triggering: (i) CFE's obligation to pay the balance of the Contract Price to Empalme; and (ii) Empalme's transfer of care, custody and control of the Plant, as well as the risk of loss thereof, to CFE. Zamora Decl., Ex. C at 5.

19.     On March 26, 2019, CFE issued the Provisional Acceptance Certificate. Zamora Decl., Ex. A at ¶ 254.

20.     On April 12, 2019, CFE paid Petitioner the Contract Price minus the withholding and discounts agreed to in the Fifth Amendment to the Contract. Upon information and belief, CFE paid $472,556,357.28 to Petitioner from a Bank of America branch located in Richmond, Virginia. Payment was made to Petitioner in an HSBC bank account located in New York. Zamora Decl., Ex. G.

21.     On March 12, 2020, CFE executed the HSBC Letter of Credit, demanding payment of $13,627,892.00 and instructing HSBC to pay that amount into a bank account that CFE maintained at Citibank N.A. in New York.  CFE claimed it was entitled to that amount because Petitioner purportedly had breached its obligations under the Contract and the Fifth Amendment. Zamora Decl., Ex. F.

## B.  The Arbitration

22.     On March 18, 2020, Petitioner commenced the Arbitration against CFE.  The Arbitration was governed by the LCIA Rules and was seated in Mexico City, Mexico pursuant to the Parties' arbitration agreement (the "**Arbitration Agreement**") in Clause 30.3 of the Contract,

which provides:

> **30.3 Arbitration**. All disputes arising in connection with this Contract, other than disputes which must be resolved pursuant to Clause 30.2, shall be decided exclusively and finally in accordance with the Arbitration Rules of the London Court of International Arbitration, by 3 (three) arbitrators; one selected by each of the Parties; the third arbitrator shall be appointed by the Parties or by the arbitrators already appointed and in the absence of an agreement by the London Court of International Arbitration (hereinafter referred to as LCIA). The arbitrators shall preferably have knowledge of Mexican law. The seat of the arbitration shall be Mexico City, Federal District, and the arbitration shall be conducted in Spanish. The Applicable Law to the merits of the arbitration and, in a supplementary manner where the LCIA Arbitration Rules are silent, shall be the one stipulated in Clause 30.1. As to procedure, if the Rules of the London Court of International Arbitration are silent, such rules as the Parties or, in the absence thereof, the Arbitral Tribunal may determine shall apply. The arbitration proceedings shall be confidential and any Person participating in the arbitration proceedings shall maintain confidentiality. The foregoing confidentiality shall be maintained as long as an Authority with jurisdiction does not require disclosure under the Applicable Law. It is understood that the Arbitral Tribunal shall accept as binding the decisions - if any - of the Expert with respect to technical or administrative matters within the limits of such Expert's mandate.

Zamora Decl., Ex. A at ¶ 1.

23.     Respondent filed its Answer to the Request for Arbitration on April 24, 2020. *Id.*

24.     Both Petitioner and Respondent nominated arbitrators who served on the Tribunal. Moreover, on July 28, 2020, the LCIA confirmed the appointment of a presiding arbitrator of the Tribunal upon the joint nomination of the two co-arbitrators. *Id.* at ¶¶ 1-4.

25.     Petitioner and Respondent both appeared and participated in the Arbitration with the assistance of counsel. *Id.* at § I, ¶¶ 1-4.  The Parties submitted extensive briefs and exhibits throughout the Arbitration, and the Tribunal held a hearing for four days in February 2022. *Id.* at § IV. Additionally, both Parties submitted post-hearing briefs. *Id.*

26.     The Tribunal rendered the Final Award on March 14, 2023. Zamora Decl., Ex. A.

27.     The Tribunal then rendered the Memorandum on June 12, 2023. Zamora Decl., Ex. B.

### C. The Issues at Stake in the Arbitration

28.     In the Final Award, the Tribunal listed the following as the main points of dispute in this arbitration:

i.     *Determine the expiration date of the Operational Warranty stipulated in Clause 20.1 of the Contract, in view of Clause Four of the Fifth Amendment Agreement to the Contract, dated March 4, 2019.*

ii.    *Determine whether* [CFE's] *enforcement of the HSBC Letter of Credit was unlawful and abusive or in accordance with the provisions of the Contract.*

iii.   *Determine whether* [Empalme] *fulfilled its obligations under the Contract with regard to the resolution of the Minor Defects (MDs) and, if so, determine the status of such MDs, as well as the consequences arising therefrom.*

iv.    *If* [Empalme] *has breached its obligations under the Contract with regard to resolving the Minor Defects (MDs), determine the effect of* [Empalme's] *breach.*

v.     *Determine whether* [Empalme] *complied with its obligations under the Contract, with regard to the resolution of the Warranty Claims (WCs) and, if so, determine the status thereof, as well as the respective consequences.*

vi.    *Determine whether or not* [Empalme's] *claim for expenses inherent to the enforcement of the HSBC Letter of Credit by* [CFE] *is admissible.*

vii.   *Determine whether or not* [Empalme's] *claim for work progress not recognized in the Fifth Amendment Agreement to the Contract is admissible.*

viii.  *Determine whether or not* [Empalme's] *claim for expenses and costs arising from the Agreement dated January 16, 2019, entered into between Empalme and CFE on the application of Clause 25.5 of the Contract (25.5 Agreement) is admissible.*

    ix.    *Determine whether or not* [Empalme's] *claim for additional or unforeseen work performed by Empalme, expenses and costs arising from the Agreement dated January 16, 2019, entered into between Empalme and CFE on the application of Clause 25.5 of the Contract (25.5 Agreement), is admissible.*

    x.    *Determine the merits of* [Empalme's] *claims and petitions for the full settlement of the Contract, as a consequence of its previous claims.*

    xi.    *Determine the admissibility of* [Empalme's] *request that the Arbitral Tribunal order the Final Acceptance of the Plant and order the Parties to sign the Closing Statement in accordance with the Law of Public Works and Related Services.*

    xii.    *In accordance with Article 28 of the LCIA Arbitration Rules, decide which of the Parties or in what proportion each of them shall pay the "Arbitration Costs" as determined by the LCIA, as well as the "Legal Costs" as determined by the Arbitral Tribunal.*

Zamora Decl. Ex. A at ¶ 173.

### D.  The Tribunal's Decisions

29.    In the "Decision" section of the Final Award, the Tribunal unanimously made the following rulings:

    i.    *With respect to the expiration of the Operational Warranty stipulated in Clause 20.1 of the Contract, the Tribunal rules that the expiration date was July 2, 2019.*

    ii.    *Regarding the enforcement by* [CFE] *of the HSBC Letter of Credit, the Tribunal rules that* [CFE] *enforced it in violation of the provisions of the Contract. Consequently,* [CFE] *shall reimburse the amount of USD $13,627,892.00 (Thirteen million six hundred twenty-seven thousand eight hundred ninety-two*

*dollars 00/100), legal tender of the United States of America, to Proyecto CCC Empalme I, S.A.P.I. de C.V.*

iii. *With respect to the claim of* [Empalme] *that the expenses inherent to the improper enforcement of the HSBC Letter of Credit by* [CFE] *should be covered, the Tribunal resolves in line with the foregoing that* [CFE] *shall pay* [Empalme] *the amount of USD $51,195.45 (Fifty-one thousand one hundred ninety-five and 45/100 dollars), legal tender of the United States of America, for the enforcement fee (USD $37,762.14 dollars), and SWIFT expenses incurred in the amount of (USD $13,433.31 dollars).*

iv. *The costs claimed by* [Empalme] *identified as non-compliance guarantees and accrued but unpaid interest in the amount of USD $1,692,506.43 are rejected as inadmissible.*

v. *With regard to* [CFE's] *claim that* [Empalme] *failed to comply with its obligations to address the Minor Defects, the Tribunal rules that* [Empalme] *complied with its obligations to resolve the Minor Defects, with the exception of those listed in the following paragraph.*

vi. *The Tribunal rules that the Minor Defects that are still pending resolution by* [Empalme] *are those identified as MD-45, MD-49, MD-321, MD-322, MD-338, MD-345, MD-352, MD-353, MD-399, MD-416, MD-436, MD-437, MD-448, MD-453, MD-457, MD-474, MD-475, MD-487, MD-517, MD-532, MD-535, MD-547, MD-554, MD-556, MD-558, MD-559 and MD-571, for a total value of USD $819,828.81 (Eight hundred nineteen thousand, eight hundred twenty-eight United States dollars and 81/100), legal tender of the United States of America.*

vii.   With respect to the Warranty Claims that CFE indicates were not resolved by [Empalme], *the Tribunal rules that* [Empalme] *complied with its obligations to resolve the claims, with the exception of those listed in the following paragraph.*

viii.  *The Tribunal rules that 10 (ten) Warranty Claims identified as WC-19, WC-21, WC-22, WC-24, WC-82, WC-180, WC-181, WC-182 and WC-183 are still pending resolution by* [Empalme], *for a total value of USD $31,466.78 (Thirty-one thousand, four hundred sixty-six United States dollars and 78/100), legal tender of the United States of America, remain pending.*

ix.    With respect to the claim of [Empalme] *that* [CFE] *must reimburse it for the amount withheld upon signature of the Fifth Amendment Agreement, the Tribunal rules that* [CFE] *must deliver to* [Empalme] *the amount of USD $337,128.97 (Three hundred thirty-seven thousand, one hundred twenty-eight United States dollars and 97/100), legal tender of the United States of America.*

x.     Regarding the claim of [Empalme] *that it be paid the costs of the additional works incurred due to the improvement of the soil in the area of GVRC equipment number 1 and the increase in the length of the pilings for the foundations of the Power Plant equipment, the Tribunal rules that* [CFE] *shall pay* [Empalme] *a total of USD $3,348,527.30 (Three million, three hundred forty-eight thousand, five hundred twenty-seven United States dollars and 30/100), legal tender of the United States of America).*

xi.    In addition to the ruling set forth in the preceding paragraph, the Tribunal rules that [CFE] *shall pay* [Empalme] *a total of USD $109,299.58 (One hundred nine thousand, two hundred ninety-nine United States dollars and 58/100), legal tender*

13

*of the United States of America, which* [CFE] *has acknowledged that it owes to* [Empalme] *for works related to the island mode of the Power Plant and the implementation of the medium voltage fast transfer.*

xii.  *In addition to the foregoing,* [CFE] *shall pay* [Empalme] *the amount of USD $7,114,684.15 (Seven million, one hundred fourteen thousand, six hundred eighty-four United States dollars and 15/100), legal tender of the United States of America, for personnel management and field office administration (USD $6,950,822.24 dollars) plus its financial costs at the agreed rate (USD $163,861.91 dollars) that* [CFE] *has acknowledged that it owes to the Claimant under the terms of the 25.5 Agreement, Paragraph 3.2.*

xiii.  *In connection with the claim of* [Empalme] *for the costs associated with the Performance Tests, the Tribunal rules that* [CFE] *shall pay* [Empalme] *a total of USD $1,214,852.45 (One million, two hundred fourteen thousand, eight hundred fifty-two United States dollars and 45/100), legal tender of the United States of America.*

xiv.  *With respect to the claim of* [Empalme] *to recover the costs derived from the third party* [sic] *claims under the 25.5 Agreement, the Tribunal rules that the claim is not admissible.*

xv.  *Regarding the request of* [Empalme] *to bifurcate the proceedings and declare the termination of the Contract to be appropriate, granting the Final Delivery Certificate and the corresponding Closing Statement, the Tribunal rejects the request as inadmissible.*

xvi.  *With regard to the petitions for a judgment on the costs of this arbitration raised*

14

*by* [Empalme] *and by* [CFE]*, the Tribunal orders* [CFE] *to pay a total of GBP £204,459.08 (two hundred four thousand, four hundred fifty-nine pounds sterling and 08/100), equivalent to 80% (eighty percent) of the total Arbitration Costs referred to above, which were paid by Empalme to the London Court of International Arbitration.*

xvii.   [CFE] *shall pay Empalme 80% (eighty percent) of the Legal Costs referred to in paragraph 616 of Chapter XIII above, with the exception of the Legal Costs sought by* [Empalme] *and specified in the following paragraph.*

xviii.  [Empalme's] *claim that* [CFE] *should pay to Empalme, as part of the Legal Costs referred to above, the "internal costs" claimed by* [Empalme] *for "response to the Arbitration by personnel of Empalme and its consortium members", associated with the time spent by executives, administrative personnel, research personnel, the advisory services of the internal legal team, administration of the proceedings, as well as the participation of witnesses in the arbitration, is rejected.*

xix.    *Finally, Empalme's claim that CFE should pay Financial Expenses on the judgments imposed on the Respondent for Arbitration Costs and Legal Costs is rejected.*

Zamora Decl. Ex. A at ¶ 618.

30.     In light of its decisions detailed above, the Tribunal provided a table illustrating the amounts owed by CFE to Empalme. That table is provided below.

15

| | |
|---|---|
| a) Refund for the HSBC Letter of Credit: | USD $13,627,892.00 |
| b) Expenses for the execution of the HSBC Letter of Credit: | USD $51,195.45 |
| c) Reimbursement withholding Fifth Amendment Agreement: | USD$ 337,128.97 |
| d) Additional Work: | USD $3,348,527.30 |
| e) Additional Recognized Work: | USD $109,299.58 |
| f) Personnel management-office administration: | USD $6,950,822.24 |
| g) Financial costs related to The 25.5 Agreement: | USD $163,861.91 |
| h) Costs Associated with Tests in accordance with the Fifth Amendment Agreement: | USD $1,214,852.45 |
| i) Arbitration Costs: | GBP 204,459.08 |
| j) Legal Costs: | USD $880,176.15 |
| | EUR €97,127.30 |
| | MXN $8,418,235.82 |
| The above amounts payable by the Respondent are reduced by the following amounts payable by the Claimant: | |
| 1) Minor Defects: | USD $819,828.81 |
| 2) Warranty Claims: | USD $31,466.78 |

Zamora Decl., Ex. A at ¶ 618.

31.     Additionally, the Tribunal provided that "[f]ailure to timely pay the amounts indicated in the preceding paragraphs shall result in the accrual of Financial Expenses until the date of payment, at the Financial Expense Rate defined in this Final Award," and that "[a]ll remaining claims and petition are denied." *Id.* at ¶ 618(U).

32.     As noted in the Final Award, "Financial Expenses" are described in the Clause

10.2 Contract as follows:

> **10.2 Financial Expenses**. *In the event that any part of the Price of the Contract, any Termination Value or any other amount payable under this Agreement is not paid when due, upon demand of the Contractor or the Commission, as the case may be, the Commission or the Contractor, as the case may be, shall pay Finance Charges at the Financial Charge Rate, and such expenses shall begin to accrue when the Parties have defined the amount to be paid, which shall be calculated on the unpaid amounts and shall be computed per Days from the time they are determined until the date on which the amounts are made available to the Contractor or the Commission, as the case may be . . .".*

Zamora Decl., Ex. A at ¶ 577.

33.    "Financial Expense Rate", as provided for in the Final Award, is defined as follows:

> *"**Financial Expense Rate**" means (a) with respect to amounts in Pesos. A rate equal to the rate established in the Federal Revenue Law in cases involving extensions for the payment of tax credits, as set forth in Article 55 of the Law of Public Services and Related Services [LOPSRM][10], and (b) with respect to amounts in Dollars, the weighted average cost of debt in Dollars prevailing at that time, in accordance with the Financial Agreements (but excluding any default interest or interest for breach), plus 1% (one percentage point), as set forth in the certificate issued by the external auditors of the Contractor who shall provide such certificate to the Commission no later than 90 (ninety) Days after the signature of the Contract. In the event that such certificate has not been provided to the Commission by the Contractor, the rate resulting from the arithmetic average of the 6 (six) Month LIBOR (London Interbank Offered Rate) rate at the close of each Day, for the period from the Day on which the obligation to make the corresponding payment is due, up to 2 (two) Days immediately prior to the date on which the payment is made, according to the Reuters Services quotation, plus 1% (one percentage point), shall be applied instead of the Rate indicated in subsection b). ."*

*Id.* at ¶ 578.

---

[10] "LOPSRM" is defined in the Final Award as "The Law of Public Works and Related Services published in the Official Gazette of the Federation dated January 4, 2000, as amended up to the date of the Contract defined below." Zamora Decl., Ex. A, at 7.

34.    On June 12, 2023, the Tribunal issued the Memorandum, which addressed various typographical and reference errors. Zamora Decl., Ex. B. These corrections did not affect the decisions provided for in the Final Award. *Id.*

35.    CFE has failed to pay any of the amounts due as of the date of this filing. Zamora Decl., ¶ 16.

## ARGUMENT

36.    In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974), the United States Supreme Court explained that "[t]he goals of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries." The Second Circuit has observed that the Panama Convention was also intended by Congress "to reach the same results as those reached under the New York Convention . . . ." *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994). Accordingly, "the Panama Convention is substantively identical to the New York Convention and [the] authority interpreting one may be applied to the other." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 n.2 (2d Cir. 2022) (*citing Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 105 (2d Cir. 2016)).

37.    "[C]onfirmation of an arbitration decision [including under the New York and Panama Conventions] is a 'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Gomez de Hernandez v. Wells Fargo Advisors, LLC*, No. 16 CIV 9922 (LGS), 2017 WL 3088396, at *2 (S.D.N.Y. July 20, 2017) (*quoting Citigroup,*

*Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015); *see also Zeiler v. Deitsch*, 500

F.3d 157, 169 (2d Cir. 2007) ("Confirmation under the [New York] Convention is a summary

proceeding in nature, which is not intended to involve complex factual determinations, other than

a determination of the limited statutory conditions for confirmation or grounds for refusal to

confirm."). "The role of a district court in reviewing an arbitral award is narrowly limited." *Agility*

*Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y.

2011), aff'd, 495 F. App'x 149 (2d Cir. 2012); *see also Telenor Mobile Commc'ns AS v. Storm*

*LLC*, 584 F.3d 396, 405 (2d Cir. 2009) ("[R]eview of arbitral awards under the New York

Convention is very limited in order to avoid undermining the twin goals of arbitration, namely,

settling disputes efficiently and avoiding long and expensive litigation."). Consistent with its

purpose "to remove obstacles to confirmation," *In re Waterside Ocean Nav. Co.*, 737 F.2d 150,

153 (2d Cir. 1984), the New York and Panama Conventions manifest a "general pro-enforcement

bias." *See e.g.*, *American Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pak., Ltd.*, 659

F. Supp. 426, 428 (S.D.N.Y. 1987), aff'd, 828 F.2d 117 (2d Cir. 1987).

38.     This Petition for recognition and enforcement of the Final Award should be

granted because, as demonstrated below: (A) all statutory conditions for recognition and

enforcement are satisfied; and (B) none of the limited grounds for refusal to confirm exist. *See*

*Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 257 Supp. 2d 681, 685 (S.D.N.Y.

2003).

### A. Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement

39.     This Petition falls within the recognition and enforcement regimes of the New

York and Panama Conventions and satisfies the statutory requirements for recognition and

enforcement of each.

40.     Chapter 2 and 3 of the FAA authorizes federal courts to enforce foreign arbitral awards that are governed by the New York and Panama Conventions.

41.     Article I(1) of the New York Convention states that it "shall apply to the recognition and enforcement of arbitral awards . . . not considered as domestic awards in the State where their recognition or enforcement is sought." Section 202 of the FAA provides that an award is considered non-domestic if it arises out of a legal relationship that is "not entirely between citizens of the United States" or that "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202*; see Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys Case  "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997).

42.     Similarly, an arbitral award falls under the Panama Convention if it "aris[es] out of a legal relationship", which is considered "commercial" and not "entirely between citizens of the United States." 9 U.S.C. §§ 202, 302.

43.     Here, the Final Award satisfies the requirements for both the New York Convention and the Panama Convention. The Final Award arose from a commercial legal relationship between Petitioner (an entity organized under the laws of Mexico) on the one hand and CFE (an entity organized under the laws of Mexico and an agency or instrumentality of Mexico) on the other hand. Therefore, the Final Award, as amended by the Memorandum, is not "entirely between citizens of the United States." Zamora Decl., Ex. A. Moreover, the legal relationship involved performance abroad, namely in Mexico. *Id.*; *see also F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 325 (S.D.N.Y. 2010) (finding that an award was international and within the scope of the New York Convention when the arbitration involved matters "clearly beyond the borders of the United States"). Consequently, the Final

Award, as amended by the Memorandum, falls within the New York Convention and the Panama Convention.

44.    Finally, the Petition is brought within the three-year statute of limitations provided for by the FAA. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention[s] is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."); *see also* 9 U.S.C. § 302 ("Sections 202, 203, 204, 205, and 207 of this title shall apply to this chapter as if specifically set forth herein, except that for the purposes of this chapter "the Convention" shall mean the [Panama Convention]"). The Final Award was rendered on March 14, 2023, and the Petition is therefore well within this period.

### B.  None of the Limited Grounds to Refuse Recognition and Enforcement Exist

45.    The FAA mandates that a court "shall confirm the award" unless one of the grounds for refusal specified in the Convention[s] applies. 9 U.S.C. §§ 207, 302; *see e.g.*, *Telenor Mobile*, 584 F.3d at 405; *In re Oltchim, SA.*, 348 F. Supp. 2d 97, 100 (S.D.N.Y. 2004). "The party asserting that one of the exceptions applies has the burden of establishing it," *MGM Productions Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 776 n.6 (S.D.N.Y. 2003), aff'd, 91 F. App'x 716 (2d Cir. Feb. 9, 2004), and "the burden of proof required to avoid confirmation is very high," *Agility Public Warehousing*, 840 F. Supp. 2d at 710.

46.    None of the grounds for refusing enforcement of an award set forth in Article V of the New York Convention and/or Article 5 of Panama Convention applies here.

### <u>CONCLUSION</u>

47.    For the foregoing reasons, Petitioner respectfully petitions this Court pursuant to the New York Convention, the Panama Convention, and Chapter 2 and 3 of the FAA, to:

a. Enter an order recognizing and enforcing the Final Award, as amended by the Memorandum, against Respondent;

b. Enter judgment in favor of Petitioner and against Respondent in the amount of the Final Award, as amended by the Memorandum, with the costs and interest as provided therein;

c. Enter judgment that Respondent is liable to Petitioner for post-judgment interest at the applicable statutory rate;

d. Enter an order requiring Respondent to pay the costs incurred by Petitioner in connection with this proceeding; and

e. Award any further relief as may be just and proper.


DATED: December 18, 2024                    Respectfully submitted,



                                            By: *s/ Bernardo M. Cremades Román*
                                            Bernardo M. Cremades Román[11]


                                            B. CREMADES Y ASOCIADOS
                                            Goya 18, Planta 2
                                            28001 Madrid, Spain
                                            +34 914 237 200
                                            bcr@bcremades.com

---

[11] Admitted to practice law in the State of New York (4817680) and Madrid, Spain (C80963).